# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 16-cv-81677-RLR/JMH

**ELECTRONIC COMMUNICATION
TECHNOLOGIES, LLC,**

      Plaintiff,

v.

**SHOPPERSCHOICE.COM, LLC**

      Defendant.

_____/

### DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendant ShoppersChoice, LLC ("ShoppersChoice"), by and through its undersigned counsel, hereby moves for entry of an Order granting ShoppersChoice judgment on the pleadings in this action.

## I.   INTRODUCTION

The patented claims at issue in this action are ineligible for patentability under 35 U.S.C. § 101 and *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347, 2355 (2014). Specifically, the asserted claims are materially indistinguishable from Plaintiff Electronic Communications Technologies, LLC's ("ECT," f/k/a Eclipse IP) claims that were invalidated at the motion to dismiss stage without any claim construction hearing in *Eclipse IP, LLC v. McKinley Equip. Corp.*, 2014 U.S. Dist. LEXIS 125529 (C.D. Cal. Sept. 4, 2014), as constituting nothing more than abstract ideas with no inventive concept. Like the *Eclipse* patents, the patent asserted in the present lawsuit, namely U.S. Patent No. 9,373,261 ("the '261 Patent" or "the Patent-in-Suit"), which shares the same specification as the *Eclipse* patents, is each directed to substantially the same abstract idea and include no inventive concept or meaningful limitations that would amount to significantly more than the abstract idea.

Claim 11, the only asserted claim in this action, merely cobbles together generic computer components and then claim the end result of an automated notification system that is not limited to a specific non-conventional mechanism for achieving that result. Therefore, the Patent-in-Suit is invalid for failure to claim patent-eligible subject matter.  As in *McKinley*, resolution of the issues raised in this Motion does not require discovery or formal claim construction.  *McKinley*, 2014 U.S. Dist. LEXIS 125529 at *16-17; *FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1092-1098 (Fed. Cir. 2016) (affirming Middle District of Florida's

Rule 12(b)(6) dismissal under 35 U.S.C. § 101 and *Alice*).  Therefore, to expedite a resolution of

a case involving an invalid patent, ShoppersChoice respectfully requests that the Court enter

judgment on the pleadings that the asserted claim of the Patents-in-Suit is invalid as ineligible

subject matter under 35 U.S.C. § 101.

## II.    SUMMARY OF RELEVANT FACTS AND PROCEDURAL BACKGROUND

On September 4, 2014, the Central District of California issued an order invalidating the

asserted claims of three of ECT's patents: U.S. Patent Nos. 7,064,681; 7,113,110; and 7,119,716

(collectively, the "*Eclipse* Patents"). *McKinley*, 2014 U.S. Dist. LEXIS 125529 at *33. The

district court found that all the asserted claims were directed to patent-ineligible subject matter.

*Id*. In particular, the district court found (a) the '681 Patent was "directed to the abstract idea of

asking someone whether they want to perform a task, and if they do, waiting for them to

complete it, and if they do not, asking someone else." *Id.* at *18-19; (b) the '716 Patent was

"directed to the abstract idea of asking someone to do a task, getting an affirmative response, and

then waiting until the task is done, 'while adding the words apply it with a computer.'" *Id.* at *25

(some internal quotation marks omitted); (c) the '110 Patent was directed "to the abstract idea of

asking people, based on their location, to go places." *Id.* at *32; and (d) none of the claims

included any "inventive concept." *See id.* at *21-33. The district court therefore dismissed ECT's

Complaint and invalidated all of the asserted claims.

On September 30, 2016, ECT filed this lawsuit against ShoppersChoice, alleging

infringement of three patents – the '261 Patent and two others.  (Doc. No. 1).  Following

ShoppersChoice's filing of an Answer, Affirmative Defenses, and Counterclaims (Doc. No. 15),

ECT filed its First Amended Complaint ("FAC", Doc. No. 21) on December 2, 2016, limiting its

infringement claim to the '261 Patent. ECT, simultaneous with its filing of the FAC, filed Motions to Strike ShoppersChoice's Affirmative Defenses and to Dismiss ShoppersChoice's Counterclaims (Doc. No. 22).[1]

Additionally, ECT, subsequent to its filing of the FAC (Doc. No. 21) and Motions to Strike and Dismiss (Doc. No. 22), filed its Answer to ShoppersChoice's Counterclaims on December 5, 2016. (Doc. No. 23). As ShoppersChoice has now, concurrently with the filing of this Motion, answered the FAC and reasserted its Affirmative Defenses and Counterclaims (as such are directed to the remaining patent in this lawsuit), this matter is now ripe for determination of the legal sufficiency of ECT's FAC. *Alibris v. ADT LLC*, 2015 U.S. Dist. LEXIS 114575, at *12-14 and n.7 (S.D. Fla. Aug. 28, 2015).

As noted in ShoppersChoice's previously-filed "Local Rule 3.8 Notice of Pending, Refiled, Related, or Similar Actions" (Doc. No. 16), at least five (5) other ECT-initiated actions involving the Patent-in-Suit are presently pending in this District. Four of these cases – *Minted*, *Lakeshore Equipment*, *Orvis*, and *Pep Boys* – currently have pending Rule 12(b)(6) motions seeking dismissal based upon the invalidity of the Patent-in-Suit under 35 U.S.C. § 101, on the same substantive basis set forth in the instant Motion for Judgment on the Pleadings. The '261 Patent is closely related to, resulted from essentially the same specification of, and is materially indistinguishable from the *Eclipse* Patents. In its FAC, ECT alleges that ShoppersChoice infringes by "us[ing] an automated order confirmation and shipment ('automated notification') to send customers updated shipment information when products are being prepared for picked up and when products are shipped." (Doc. No. 21 at ¶ 20).

---

[1] On December 6, 2016, the Court denied ECT's Motions to Strike and Dismiss without prejudice as moot in view of ECT's filing of the FAC. (Doc. No. 24).

The '261 Patent, entitled "Secure Notification Messaging with User Option to Communicate with Delivery or Pickup Representative," is generally directed to "systems and methods that notify a party of travel status associated with one or more mobile things (MTs)." '261 Patent at 1:50-51. The '261 patent issued on June 21, 2016, with three independent claims and 27 dependent claims, all of which are directed to the idea of enabling a party to communicate with another regarding tracking an item for delivery or pickup.

Independent claim 11 of the '261 Patent, which is the only asserted claim in the FAC, is set forth in full below, with language relating to generic computer hardware and software set in gray, and the key elements of the claimed invention set out in bold red for ease of reading:

**U.S. Pat. No. 9,373,261, Claim 11**:

An automated notification system, comprising: one or more transceivers designed to communicate data; one or more memories; one or more processors; and computer program code stored in the one or more memories and executed by the one or more processors, the computer program code comprising: code that enables a **first party associated with a personal communication device (PCD) to input or select authentication information** for use in connection with a subsequent notification communication session involving advance notice of a delivery or pickup of a good or service at a stop location by a mobile thing (MT); code that causes storage of the authentication information; code that **monitors location or travel information** in connection with the MT; code that causes initiation of the notification communication session to the PCD with the one or more transceivers, **in advance of arrival of the MT at the stop location, based at least in part upon the location or travel information associated with the MT**; code that, during the notification communication session, **provides the authentication information** to the PCD that indicates to the first party that the notification communication session was initiated by an authorized source; **and** code that, during the notification communication session, **enables the first party to select whether or not to engage in a communication session** with a second party having access to particulars of the pickup or delivery.

Like the claims of the related *Eclipse* Patents, Claim 11 recites only general purpose computer components programmed in a conventional way to perform the claimed abstract ideas, adding only the purported limitations relating to tracking "a mobile thing." The '261 Patent's

4

claims refer only to "an automated notification system." '261 Patent at Claims 1, 11, 21. According to the '261 Patent, a "mobile thing (MT)" could be anything like "a bus, automobile, truck, train, ship, plane, aircraft, etc." *Id.* at 1:53-59. A "personal communication device" can be "a personal computer (PC) capable of displaying the notification through e-mail or some other communications software, a television, a wireless (e.g., cellular, satellite, etc.) or non-wireless telephone, a pager, a personal data assistant, a navigation system in a motor vehicle, a radio receiver or transceiver, or any other device capable of notifying the user with some type of user perceptible emission." *Id.* at 19:35-41. These terms all refer to generic, conventional means capable of use to implement abstract ideas. The specification (text and drawings) of the '261 Patent is lengthy, as it spells out in detail several specific ways in which computer code might be written to achieve the result of "allowing confidential customer supplied information to be used within the retailer's communications to verify authenticity," but nothing more than standard software code running on generic computers is actually claimed in the claims at issue, as can be seen from reviewing the claim set out above.

The abstract idea of providing identifying information to a customer to assure the customer that the communication is legitimate is well within the common experience of us all. For example, a plumbing service calls an individual in advance of the arrival of the service truck to advise of the arrival, and references information about the customer's request in the call (individual's name, address, reason for call, etc.) to assure the individual of the authenticity of the call and the truck's driver.  A doctor's office calling to confirm a medical appointment mentions details of the expected patient's name, and date and time of appointment, in part to assure the patient that they are speaking to their doctor's office.  A parent and child have an

agreed "code word" to be used by any adult picking up the child at school on the parent's behalf, to assure the child that it is safe to accompany the adult.  It is not a patentable invention simply to enable this well-known idea using generic computer code on standard computers and servers.

ECT describes the inventive concept of its '261 Patent as "methods and systems to enable online retailers to assist their customers in determining the difference between trusted and non-trusted shipment and order confirmation emails."  *See* DE-21, ¶ 9.  The patented inventions allegedly solve this problem by "allow[ing] confidential customer supplied information to be used within the retailer's communications to verify authenticity."  *Id.* ¶ 10.  ShoppersChoice is accused of infringing the patents using the same broad description of the invention: "Defendant includes customer information within notifications/messages to provide confidence to the notification-receiving party that the order confirmation and or shipment notification is from Defendant…."  *Id.* ¶ 19.

ECT has identified one claim in the '261 Patent, Claim 11, that ShoppersChoice allegedly infringes. *Id.* ¶ 20.  This claim does not describe any non-generic hardware improvements to standard computer systems.  It claims the use of generically-described computer hardware and software (*e.g.*, "memories," "processors," "code") to perform the various functions of the invention.  *Id*.  As detailed herein, the Court should grant this motion and enter Judgment on the Pleadings invalidating the asserted claim of the Patent-in-Suit under 35 U.S.C. § 101.

## III.   LEGAL STANDARD

### A.   Judgment on the Pleadings Under Rule 12(c).

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party

**FRIEDLAND VINING, P.A.** • 9100 S. Dadeland Blvd., Suite 1620, Miami, Florida 33156 • (305) 777-1720 • (305) 456-4922 telecopier

is entitled to judgment as a matter of law. *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996). A motion for judgment on the pleadings pursuant to Rule 12(c) "is governed by the same standard as a motion to dismiss for failure to state a claim on which relief may be granted." *Alibris*, 2015 U.S. Dist. LEXIS 114575, at *11 (*citing Black v. Kerzner Int'l Holdings Ltd.*, 958 F. Supp. 2d 1347, 1349 (S.D. Fla. 2013)). Whether brought as a motion for judgment on the pleadings under Rule 12(c) or as a motion to dismiss under Rule 12(b)(6), the legal standard is the same. *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002). Both rules authorize dismissal if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As the Supreme Court held, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The Court need not accept Plaintiff's legal conclusions as true: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Thus, the Court should accept the facts in the complaint as true and view them in light most favorable to the nonmoving party. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). However, a plaintiff's grounds for relief "requires more than labels and conclusions;" he must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. The pleadings considered by the court on a motion for judgment on the pleadings include the complaint, answers, counterclaim, and cross-claim, if any. *Santmyer v. Prudential Ins. Co. of Am.*, 761 F. Supp. 114, 117 (M.D. Fla. 1991). "Judgment on the pleadings is appropriate when material facts are not in dispute and judgment can be rendered by looking at

7

the substance of the pleadings and any judicially noticed facts." *Bankers Insurance Co. v. Florida Residential Property and Casualty Joint Underwriting Association*, 137 F.3d 1293, 1295 (11th Cir. 1998).

Motions brought under Rules 12(b)(6) or 12(c) are an appropriate setting for determination of patent-eligible subject matter pursuant to 35 U.S.C. § 101. *McKinley*, 2014 U.S. Dist. LEXIS 125395 at *17 ("In appropriate cases, those considerations counsel entertaining § 101 at the motion to dismiss stage. Here, based on the substance of the parties arguments and the content of the patents, this Court would find that neither separate claim construction proceedings nor further development of the factual record are required before addressing the § 101 issue."); *FairWarning IP*, 839 F.3d at 1097 ("FairWarning further alleges that the district court improperly granted Iatric's motion under Rule 12(b)(6). We disagree. We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion.").

Although ECT has yet to answer ShoppersChoice's counterclaims brought in response to the FAC, the Court is still in position to enter judgment on the pleadings with respect to ECT's FAC:

> The Court notes that a party may move for judgment on the pleadings under Rule 12(c) only after the pleadings are closed. *See* Fed. R. Civ. P. 12(c). The Court also notes that because Defendant has not answered Plaintiff's SAC, the pleadings are not technically closed in the instant case. *See, e.g., Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002). However, it is not unprecedented to consider the pleadings closed, despite a defendant's technical failure to answer an amended complaint, for purposes of construing a defendant's motion as one for judgment on the pleadings. See, e.g., *In re Dorsey*, 497 B.R. 374, 381 n.5 (Bankr. N.D. Ga. 2013).

> • • •

8

**The Court finds the content of Plaintiff's SAC and Defendant's Answer to Plaintiff's FAC sufficient to render judgment on the pleadings.**

Defendant seeks judgment on the pleadings for Plaintiff's failure to state a claim. The Court's focus is therefore the sufficiency of Plaintiff's SAC, not the content of Defendant's answer thereto. To the extent that Plaintiff's SAC includes any allegations not included in Plaintiff's FAC, and to the extent Defendant's technical failure to answer Plaintiff's SAC could be construed as admitting the allegations therein, the Court notes that it must accept all allegations in Plaintiff's SAC as true for the purposes of Defendant's Renewed Motion whether or not Defendant has denied these allegations in a responsive pleading directed to Plaintiff's SAC. The Court also notes that the same legal standard applies, and the Court must accept all allegations in Plaintiff's SAC as true, whether Defendant's Renewed Motion is construed as a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings.

*Alibris*, 2015 U.S. Dist. LEXIS 114575 at *12-14 and n.7 (emphasis added). In the instant case, the substantive content of the Counterclaims filed in response to the FAC, as they relate to the sole remaining patent in this lawsuit, is virtually identical to the original Counterclaims filed by ShoppersChoice and answered by ECT. Thus, while ECT has yet to answer ShoppersChoice's counterclaims filed in response to the FAC, the Court, as a result of ShoppersChoice's Answer to the FAC and ECT's Answer to the original Counterclaims, is presently in position to determine the sufficiency of ECT's FAC, to which an Answer has been filed.

**B.      Ineligible Subject Matter Under 35 U.S.C. § 101**

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The law specifically recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). "[A]bstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).

ECT's FAC does not state a claim upon which relief can be granted, and the Court should

9

enter judgment for ShoppersChoice for that very reason.  The '261 patent, on its face, describes an invention that is unpatentable.  The patent describes merely the abstract idea of providing a customer "authentication information" in a communication to assure the customer that the communication is legitimate, a common human practice.  The patent is therefore not drawn to patentable subject matter under 35 U.S.C. § 101.

Determining whether a patent claim impermissibly claims an abstract idea involves two steps: First, the court determines "whether the claims at issue are directed to a patent-ineligible concept."  *Alice*, 134 S. Ct. at 2355. As a general rule, fundamental economic and conventional business practices – such as the credential verification process in the present case – are abstract ideas.  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014).  Second, if the claim contains such an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).  The analysis requires, especially during the first step, that the claim at issue be compared to similar claims that have been analyzed in previous cases. *Digitech Image Techs., LLC v. Elecs. For Imaging, Inc.* 758 F.3d 1344, 1350 (Fed. Cir. 2014)("The claims at issue here are even broader than the claim in *Nuijten*. . . . We therefore hold that the device profile claims of the '415 patent do not encompass eligible subject matter as required by section 101 and are therefore not patent eligible.").

Transformation of an idea into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Alice*, 134 S. Ct. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). In the

**FRIEDLAND VINING, P.A.** • 9100 S. Dadeland Blvd., Suite 1620, Miami, Florida 33156 •
(305) 777-1720 • (305) 456-4922 telecopier

context of computer-related technology, a claim must be directed to a specific "improvement in computer capabilities" rather than "an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011); *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005, 1008 (Fed. Cir. 2014) ("[N]ot only can these steps be carried out in existing computers long in use,' but they also can be 'done mentally.'" (citation omitted)).

In addition, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity, such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297-1301; *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010); *Diamond v. Diehr*, 450 U.S. 175, 191-92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

*McKinley* already considered similar issues as they apply to three other patents in the same family as that at issue here, finding ECT's asserted claims invalid. Claims in U.S. Patent Nos. 7,119,716, 7,064,681 and 7,113,110 – which share an identical specification (text and images other than the claims) with the patents at issue in this case, were invalidated on *Alice* grounds over two years prior to the filing of the instant action. *McKinley*, 2014 U.S. Dist.

LEXIS 125529, at *32 (finding claims for a notification system used with transportation vehicles unpatentable because "[t]he claim is directed to the abstract idea of asking people, based on their location, to go places."); '261 Patent, DE-21-1 at 1 (showing "Eclipse IP, LLC" as the original applicant for the '261 patent, and listing the '716 patent as a "Related U.S. Application."). In *McKinley*, the court described one of the related patents in this way:

> The claims are directed to the abstract idea of asking someone whether they want to perform a task, and if they do, waiting for them to complete it, and if they do not, asking someone else. The claims also direct that the method be performed "in connection with a computer system." There are likely a myriad number of ways to do so, and the '681 Patent preempts them all. The claims capture that broad scope without any "inventive concept" or other limiting principle.

*McKinley*, 2014 U.S. Dist. LEXIS 125529, at *21. Though the patents in this case word the claims differently, similar reasoning requires the entry of judgment in ShoppersChoice's favor.

## IV.    ARGUMENT AND CITATION OF AUTHORITIES

The asserted claims are directed to the abstract ideas of ensuring trusted sources of information and enabling parties to communicate regarding a tracked item and, as a result, they fail both prongs of the *Alice* test. Abstract ideas are not eligible for patenting. None of the asserted claims contains an "inventive concept sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355 (emphasis added). Moreover, the claims are materially indistinguishable from the *Eclipse* Patents that were invalidated in *McKinley*.

In its moot Motions to Strike and Dismiss, ECT made a point of pointing out that the *McKinley* decision was expressly considered by the Patent Office in its decision to grant the '261 Patent. Doc. No. 22 at p. 7. However, ECT's arguments regarding the presumed <u>validity</u> of the '261 Patent should not be confused with the issues presented to the Court when it is asked to

determine the <u>eligibility</u> of the subject matter pursuant to Section 101, which involves a different analysis:

> Because the PTO has for many years applied an insufficiently rigorous subject matter eligibility standard, no presumption of eligibility should attach when assessing whether claims meet the demands of section 101.
>
> Although the Supreme Court has taken up several section 101 cases in recent years, it has never mentioned—much less applied—any presumption of eligibility. The reasonable inference, therefore, is that while a presumption of validity attaches in many contexts, *see Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2243-47, 180 L. Ed. 2d 131 (2011), no equivalent presumption of eligibility applies in the section 101 calculus.

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 720-21 (Fed. Cir. 2014) (Mayer, J., concurring); *Zimmers v. Eaton Corp.*, 2016 U.S. Dist. LEXIS 101023, *13 (S.D. Ohio Aug. 2, 2016) (finding that "Defendants need not prove ineligibility by clear and convincing evidence but only by a preponderance of the evidence" and granting judgment on the pleadings that patents issued post-*Alice* are invalid); *MacroPoint, LLC v. FourKites, Inc.*, 2015 U.S. Dist. LEXIS 151045, *9 (N.D. Ohio Nov. 6, 2015), *aff'd*, 2016 U.S. App. LEXIS 21811, *1 (Fed. Cir. Dec. 8, 2016) (granting motion to dismiss under § 101 after holding that "[c]ontrary to plaintiff's argument, the fact that the PTO may have considered *Alice*-based guidelines before issuing the patents-in-suit does not *mandate* a finding that the patents are valid."); *Versata Software, Inc. v. NetBrain Techs., Inc.*, 2015 U.S. Dist. LEXIS 132000, *4-6 (D. Del. Sept. 30, 2015) ("And as to the instant Motions, filed at the pleading stage (a stage at which any facts that might be in dispute are to be construed in the light most favorable to the plaintiff), the 'clear and convincing' standard of proof should not come into play at all."). Thus, notwithstanding ECT's reliance on its disclosure of the *McKinley* decision to the Patent Office as supporting the validity of the '261 Patent, no presumption of eligibility should apply to this Court's Section 101 analysis.

The claims of the Patent-in-Suit cover similarly abstract ideas, adding only the purported limitations relating to tracking "a mobile thing." These limitations, however, do not sufficiently distinguish the Patent-in-Suit from the asserted claims that were invalidated in *McKinley* for them to be patent eligible.

### A.    *Alice* Step One: The Claims Are Directed To An Abstract Idea

In determining patent eligibility under § 101, the court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Here, the claims of the Patent-in-Suit are directed to the abstract ideas of ensuring trusted sources of information and enabling parties to communicate regarding tracked items. Indeed, "the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

The '261 Patent and the invalidated *Eclipse* claims all derive from the same original applications and therefore have similar disclosures. *See, e.g., Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 518 F.3d 1353, 1359 (Fed. Cir. 2008) ("a divisional application contains an identical disclosure to its parent application")*; '261 Patent*, DE-21-1 at "Related U.S. Application Data" (showing patents are related).

The key elements of Claim 11 of the '261 Patent (highlighted *supra*) are these: a customer provides information that will later be used to authenticate a communication; subsequently, that authentication information is provided to the customer in connection with a communication to allow the customer to choose whether or not to communicate further.

Courts are encouraged, in step one of the *Alice* process, to look broadly at the "focus" of

14

the claims and "their character as a whole." *Elec. Power Group,* 830 F.3d 1350 (Fed. Cir. 2016). The elements of Claim 11 are ***a staple of basic human behavior***. As ECT admits, the claims are addressed to the abstract idea of using a customer-selected piece of information "to determine the difference between trusted and non-trusted shipment and order confirmation emails." (Doc. No. 21, ¶ 9).

This abstract idea has been central to human interactions for many years; consider the following examples:

a. A parent and a child agree on a "safe word" to be used by anyone picking the child up from school other than the parent; when another adult approaches, they use the safe word and the child can choose whether to get in the car.

b. An individual with a need for a plumber selects "Precision Plumbers" from the Yellow Pages and calls to arrange for service; Precision Plumbers calls when the van leaves the shop and tells the customer "the van is on the way – our employee Mike will be there in half an hour," mentioning details about the customer's service order to show that the call is legitimate, and the customer uses that information to decide on the safety of permitting Mike entrance.

c. Two individuals meet on a dating site and agree to have coffee; they agree that one will wear a red tie to the coffee shop; on arrival at the coffee shop, the other individual sees the red tie and can choose to continue with the date.

ECT's patents do nothing more than attempt to claim a patent on this basic human behavior.

The Court may rely on its own judicial notice of human behavior to evaluate such matters. *FairWarning IP,* 839 F.3d at 1095 ("These are the same questions…that humans in analogous situations detecting fraud have asked for decades, if not centuries."); *Intellectual Ventures I LLC v. Symantec Corp.*, 2016 U.S. App. LEXIS 17695 at *10 (Fed. Cir. Sept. 30, 2016) ("Here, it was long-prevalent practice for people receiving paper mail to look at an envelope and discard certain letters, without opening them, from sources from which they did not wish to receive mail based on characteristics of the mail . . . . The patent merely applies a well-

known idea using generic computers 'to the particular technological environment of the Internet'.").

Ensuring trusted sources of information and enabling parties to communicate regarding tracked items are abstract ideas that can be implemented in a variety of ways, including (as shown above) by a human. The claims are thus directed to patent-ineligible subject matter. *See CyberSource*, 654 F.3d at 1372 (claim for verifying the validity of a credit card transaction over the Internet abstract because the "steps can be performed in the human mind, or by a human using a pen and paper"); *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (claims for computer-implemented system to enable borrowers to anonymously shop for loan packages abstract where "[t]he series of steps covered by the asserted claims . . . could all be performed by humans without a computer").

The claims at issue in the present case are nothing more than systems that implement a common human behavior, and thus are patent-ineligible "abstract ideas."  Accordingly, the Court should move to the second step of the *Alice* inquiry, to determine whether the claims contain an "inventive concept" that renders them patent-eligible.

### B.     *Alice* Step Two: There Is No "Inventive Concept"

Claim 11 also fails step two of the *Alice* test.  Because the Patent-in-Suit is directed to an abstract idea, the Court must next determine whether the claims contain an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, the claims "must include additional features" which "must be more than well-understood, routine, conventional activity." *Ultramercial,* 772 F.3d at 715 (Fed. Cir. 2014) (quotations and citations omitted). Here, the

16

independent claims include no inventive concept or meaningful limitations that would render them patent-eligible. *McKinley*, 2014 U.S. Dist. LEXIS 125529, at *21 (finding that ECT's claims capture an abstract concept "without any 'inventive concept' or other limiting principle"). Indeed, the stated problem the Patent-in-Suit purports to solve is simply "to know, with substantial accuracy, the expected arrival or departure time of a" mobile vehicle or "thing," a concept that is far from inventive.

While ECT may argue that its system has an inventive element because the system is "automated," the Federal Circuit has cautioned that such an element does not resolve ECT's subject matter issues:

> Claims that amount to nothing significantly more than an instruction to apply [an] abstract idea…using some unspecified, generic computer and *in which each step does no more than require a generic computer to perform generic computer functions do not make an abstract idea patent-eligible,* because claiming the improved speed or efficiency inherent with applying the abstract idea on a computer does not provide a sufficient inventive concept.

*Symantec,* 2016 U.S. App. LEXIS 17695 at 11-12 (citations and quotation marks omitted and emphasis added).

Timing and efficiency associated with "computerizing" a delivery technique was rejected as a basis for novelty in *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 2016 U.S. Dist. LEXIS 115562, 12-13 (S.D. Ohio Aug. 29, 2016) (citations omitted):

> The steps of the claimed method, as informed by the '078 Patent's specification, simply use available technology, performing its standard functions, to execute the abstract idea of getting shipping information to load planners faster. The image scanners simply scan images, the transmitters simply transmit the images, the receivers simply receive the images, and the load planning software simply extracts the data from the images and transforms the data into a loading manifest. The patent does not solve any technological problems and it specifically relies on commercially-available hardware and software to execute the method. The fact that the execution of the abstract idea can be carried out more efficiently through the use of technology does not mean that the patent covers

17

eligible subject matter.

The fact that the elements of the claim are applied to or limited to the shipping and delivery business does not make the claims patentable. *Elec. Power*, 830 F.3d at 1354 ("…limiting the claims to the particular technological environment…is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core.")

The lack of inventive concept is underscored by the Patents-in-Suit' description (and depiction) of only off-the-shelf computer components that perform conventional tasks in a conventional manner to implement the abstract idea. *See, e.g.*, '261 Patent at Fig. 2 (depicting a generic interface connected to generic components, including "input device," "display," "disk," "printer," "sensor," and "processing element"). Notably, the *McKinley* court discussed the broad sweeping nature of the specification when invalidating the asserted claims of the related *Eclipse* Patents. In particular, it recognized that "[t]he specification teaches in one place that a personal communications device is a broad category that includes telephones, pagers, computers, and personal data assistants." *McKinley*, 2014 U.S. Dist. LEXIS 125529, at *19. The court also pointed out that "in another [place], the specification is even more expressly sweeping":

> Nonlimiting examples of PCDs are as follows: a personal computer (PC) capable of displaying the notification through e-mail or some other communications software, a television, a wireless (e.g., cellular, satellite, etc.) or non-wireless telephone, a pager, a personal data assistant, a navigation system in a motor vehicle, a radio receiver or transceiver, or any other device capable of notifying the user with some type of user perceptible emission.

*Id.* at *19-20 (quoting the specification of the *Eclipse* Patents). The Patent-in-Suit, which shares the same specification, includes the same sweeping statements and thus have the same issues identified by the court in *McKinley*. *'261 Patent at 19:35-42*.

The mere automation and efficiency permitted by performing the abstract ideas on a

generic computer does not bring the claims into the realm of eligibility. *Alice*, 134 S. Ct. at 2358 ("These cases demonstrate that the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. Stating an abstract idea "while adding the words 'apply it' " is not enough for patent eligibility."); *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, No. 6:12-cv-00951-LED, 2014 WL 923280, at *4 (E.D. Tex. Jan. 21, 2014). The Patent-in-Suit merely claims the task of communicating regarding a tracked item and add some "apply it" language: namely, the use of a generic computer system to perform the claimed processes. To be sure, the asserted claims' recitation of "computer-based" systems, "a processor," a "personal communication device," and "a memory" is not functionally different from reciting just a "computer" because such components are not "new machinery." *SmartGene, Inc. v. Advanced Biological Labs, SA*, 555 Fed. App'x 950, 955 (Fed. Cir. 2014); *McKinley*, 2014 U.S. Dist. LEXIS 125529, at *22 ("And even if [the inventor] was the first to discover the idea that you could use a computer system and a telephone to ask people whether they wanted to perform a task, those devices are generic and ubiquitous, and in the modern world, reciting them does not overcome the abstractness problem.").

There simply is no specific non-conventional application of the idea, as the claims contain no restrictions on how to implement the idea. *See Internet Patents Corp. v. Active Network, Inc*., 790 F.3d 1343, 1348 (Fed. Cir. 2015) (affirming invalidity where the claim "contains no restriction on how the result is accomplished" and where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation"). Nor do the steps of the asserted claims "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data

19

compression," *DDR Holdings,* 773 F.3d at 1259, or by improving "the way a computer stores and retrieves data in memory," *Enfish*, 822 F.3d at 1339.

When the "insignificant computer-based limitations are set aside from those claims that contain such limitations, the question under § 101 reduces to an analysis of what additional features remain in the claims." *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) (holding claims patent-ineligible even when the specification "contains very detailed software implementation guidelines" because "the system claims themselves only contain generalized software components arranged to implement an abstract concept on a computer"). In this case, all that is left once the off-the-shelf components are stripped away are the abstract ideas of "ensuring trusted sources of information and enabling parties to communicate regarding tracked items."

The Patent-in-Suit's claims recite an abstraction or idea having no particular concrete or tangible form. Without any meaningful limitations, the Patent-in-Suit preempts the abstract ideas of "ensuring trusted sources of information and enabling parties to communicate regarding tracked items" and violate "the longstanding rule that '[a]n idea of itself is not patentable.'" *Benson*, 409 U.S. at 67 (quotation omitted). The claims thus fail *Alice's* second prong and, since the patent at issue claims nothing more than a well-known human behavior implemented on a generic computer system, the asserted claim should be deemed patent-ineligible and judgment entered in ShoppersChoice's favor.

## V.    CONCLUSION

Because the claims of the '261 Patent are patent-ineligible subject matter under § 101, ShoppersChoice respectfully requests that the Court enter judgment on the pleadings in its favor.

**FRIEDLAND VINING, P.A.** • 9100 S. Dadeland Blvd., Suite 1620, Miami, Florida 33156 •
(305) 777-1720 • (305) 456-4922 telecopier

CASE NO.: 16-cv-81677-RLR/JMH

Date:   December 9, 2016                    Respectfully submitted,

                                           **FRIEDLAND VINING, P.A.**

                                           /s/David K. Friedland
                                           By:  David K. Friedland
                                           Florida Bar No. 833479
                                           Email:  dkf@friedlandvining.com
                                           Jaime Rich Vining
                                           Florida Bar No. 030932
                                           Email:  jrv@friedlandvining.com
                                           9100 S. Dadeland Blvd., Suite 1620
                                           Miami, FL 33156
                                           (305) 777-1720 – telephone
                                           (305) 456-4922 – facsimile

                                           and

                                           **MAYBACK & HOFFMAN, P.A.**
                                           By:  James A. Stepan
                                           Florida Bar No. 184896
                                           Email:  jstepan@mayback.com
                                           5846 S. Flamingo Road, #232
                                           Fort Lauderdale, FL 33330
                                           (954) 251-5002 – telephone
                                           (954) 704-1588 – facsimile

                                           *Counsel for Defendant ShoppersChoice.com*

CASE NO.: 16-cv-81677-RLR/JMH

## CERTIFICATE OF SERVICE

I hereby certify that on the above referenced date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the Manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**Eric Nissim Assouline**
**Greg Matthew Popowitz**
Assouline & Berlowe, P.A.
213 E Sheridan Street, Suite 3
Dania Beach, FL 33004
Email: ena@assoulineberlowe.com
Email: gmp@assoulineberlowe.com

*Service via CM/ECF*

**Peter Andrew Koziol**
Assouline & Berlowe, P.A.
1801 N. Military Trail, Suite 160
Boca Raton, FL 33431
Email: pak@assoulineberlowe.com

*Service via CM/ECF*

/s/David K. Friedland
David K. Friedland

22